# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 13, 2012          Decided March 8, 2013

No. 11-5291

CAMILLE GROSDIDIER,
APPELLANT

v.

BROADCASTING BOARD OF GOVERNORS, CHAIRMAN,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-01553)

*Leslie D. Alderman III* argued the cause and filed the briefs for appellant.

*Jane M. Lyons*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Judith A. Kidwell*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON and ROGERS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*:  Camille Grosdidier has worked in the French to Africa Service of the Voice of America ("VOA") since 1987, since 1991 as a GS 12.  When she did not receive a promotion to Senior Editor GS 13 in 2006, she sued the Chairman of the Broadcasting Board of Governors ("BBG") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*  She now appeals the grant of summary judgment, contending the district court erred in treating her retaliation claim as a premature hostile work environment claim, and in requiring direct evidence of discrimination beyond evidence of pretext.  She also contends that the denial of her motion for spoliation sanctions, in light of the destruction of interview notes by two of the three promotion review panelists, erroneously required evidence of bad faith.  We agree with the district court's finding that no reasonable employee could believe the objected-to conduct was unlawful under Title VII and hence summary judgment was appropriately granted on her retaliation claims.  And although this court has not held that bad faith is required for a party to be entitled to a spoliation inference where, as here, there is a duty of preservation, the error was harmless.  Grosdidier's objections to the selection process, even applying a spoliation inference, fail to demonstrate that summary judgment was inappropriately granted on her discrimination claims.  Accordingly, we affirm.

## I.

Grosdidier is a white female of French national origin who has worked as an international broadcaster for the VOA's French to Africa Service since 1987.  She has held a GS-12 grade level position since 1991 and her supervisor has been Idrissa Seydou Dia, an African American male from Senegal.  Her experiences in that Service have not always been to her liking.  In April 2004, she complained to her supervisor, Dia, that a coworker had forwarded an email to her and other

coworkers that contained what she perceived to be a sexually suggestive image of a well-known singer. In 2005, she complained that a coworker was engaging in inappropriate flirting, hugging, and kissing with male employees. Previously she had made similar informal and formal complaints related to issues as varied as the clothing worn by a coworker and co-worker attendance. She proffered evidence of other instances of inappropriate office behavior, including Dia and a female subordinate referring to one another as "Sexy Mama" and "Sexy Papa," a female coworker using the French word for "master" to refer to the managing editor, and the alleged viewing of pornography on work computers by a male coworker. She also complained when she was not selected for a GS-13 position in 2002.

In early 2006, the BBG announced an opening for an international broadcaster position at the GS-13 grade level in the VOA's French to Africa Service. The posting described "a multi-media Senior Editor" position and listed six equally weighted "Knowledge, Skills, and Ability Factors" related to the position's television, radio, and internet editing and broadcasting responsibilities. Thereafter Dia convened a panel of VOA employees to interview and evaluate the candidates: Andre de Nesnera, a senior correspondent at the VOA and a Foreign Service Officer; Diane Butts, the Television Manager for the VOA's Africa Division; and Sandra Lemaire, an editor at the VOA's English Web Desk. The panel interviewed the applicants, including Grosdidier, and recommended the selection of Timothee Donangmaye, a black male originally from Chad who was the host of the Service's television program, *Washington Forum*. Although all of the panelists took notes during the interviews, only Butts preserved her notes. Dia forwarded the panel's recommendation to his supervisors, and Donangmaye was promoted.

Grosdidier, upon learning of the selection, filed a formal complaint with the Equal Employment Opportunity office ("EEO office") in July 2006. She claimed that the selection panel had discriminated against her because of her gender, race, and national origin. She also claimed that her rejection was in retaliation for her earlier EEO complaints in 2004 and 2005. She filed another EEO complaint in December 2007, claiming that her decision to pursue the EEO process prompted further discriminatory and retaliatory treatment. Before the Equal Employment Opportunity Commission ("EEOC"), Grosdidier filed a motion *in limine* requesting, as she was a United States citizen and Donangmaye was not, that the Administrative Judge modify the pretext standard in light of the BBG's obligations under 22 U.S.C. § 1474(1) to give preference in hiring to United States citizens. The judge ruled he lacked authority to interpret the statute and stated the case should be litigated in the district court. Her initial effort to do so under the Administrative Procedure Act was unavailing. *See Grosdidier v. Chairman, Broadcasting Board of Governors*, 560 F.3d 495 (D.C. Cir. 2009).

Five months after the district court's dismissal in that case, Grosdidier sued the BBG on September 9, 2008, pursuant to Title VII, alleging unlawful discrimination and retaliation. On March 30, 2010, she moved for an adverse inference on the ground that two panelists had destroyed their interview notes despite an EEOC regulation requiring preservation of the notes for one year, 29 C.F.R. § 1602.14.[1] The district court refused to

---

[1] 22 C.F.R. § 1602.14 (2006) provides, as relevant:

Any personnel or employment record made or kept by an employer (including but not necessarily limited to . . . records having to do with . . . promotion . . . ) shall be preserved by the employer for a period of one year from the date of the

apply an inference in the absence of evidence of bad faith by the BBG, and granted the BBG's motion for summary judgment, except as related to the reduction of Grosdidier's editing duties after her July 2006 EEO complaint. *See Grosdidier v. Chairman, Broadcasting Board of Governors*, 774 F. Supp. 2d 76, 104, 114 (D.D.C. 2011). The district court also denied her motion for reconsideration or, in the alternative, to amend the judgment. *See id.* at 115. Grosdidier appeals, and our review of the grant of summary judgment is *de novo. See Pardo-Kronemann v. Donovan*, 601 F.3d 599, 604 (D.C. Cir. 2010).

## II.

Title VII makes it unlawful for federal employers to discriminate on the basis of race, gender, or national origin. *See* 42 U.S.C. § 2000e-16(a). In addition, it prohibits employer retaliation when an employee has "opposed any practice made an unlawful employment practice by this subchapter," *see id.* § 2000e-3(a); *see Crawford v. Metropolitan Gov't of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 274 (2009), and when an employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter," *see* 42 U.S.C. § 2000e-3(a); *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (noting § 2000e-3(a)'s ban on retaliation applies to federal employers through § 2000e-16). Grosdidier's claims involve both alleged retaliation and discrimination.

---

making of the record or the personnel action involved, whichever occurs later. * * * Where a charge of discrimination has been filed . . . against an employer under title VII . . . , the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a material fact is genuine when the evidence before the district court is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As part of this assessment, the court must view the evidence "in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in favor of the nonmoving party." *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

**A.**

Grosdidier's retaliation claim focuses on her employer's responses, or lack thereof, to her informal 2004 and 2005 email complaints. An employee's opposition to an employment practice is protected under Title VII when the employee "reasonably and in good faith *believed* [the practice] was unlawful under the statute." *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012). Although opposition activity may be protected even though the employer's practices do not amount to a violation of Title VII, the employee-plaintiff must have a good faith and reasonable belief that the practices are unlawful. Where, as here, a plaintiff contends that the practices she opposes constitute a hostile work environment, the court must assess whether she could have reasonably believed that "the workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult that [wa]s sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)) (internal quotation marks omitted). Not all complaints are protected under this framework.

Viewing the evidence most favorably to Grosdidier, her complaints identified conduct by her co-workers that was inappropriate in a professional office environment. Her complaints regarding this conduct were not, however, protected activity because, as the district court found, "no reasonable employee could believe that the conduct about which she complained amounted to a hostile work environment under Title VII." *Grosdidier*, 774 F. Supp. 2d at 108. The type of conduct referenced in Grosdidier's complaints, such as circulating an email with a suggestive image of a well-known musician straddling a cannon and excessive hugging and kissing between a female coworker and several male coworkers and visitors, is insufficient to support a good faith belief that the conduct was "so objectively offensive as to alter the 'conditions' of [her] employment." *Oncale*, 523 U.S. at 81. Even considering the additional evidence she proffered in her motion for reconsideration, which the district court properly declined to consider because she should have submitted it in opposing summary judgment, *Grosdidier*, 774 F. Supp. 2d at 118–19, the evidence viewed as a whole was not sufficient to show the requisite reasonable belief.

Whatever merit there might be to her suggestion that these kinds of complaints should be protected so that an employer will take steps to ameliorate the conduct before it escalates and results in a hostile work environment, *cf. Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764–65 (1998)*; Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012, 1019 (D.C. Cir. 1981), this court has required that under Title VII she must show that she had a reasonable belief the conduct was unlawful. *See McGrath*, 666 F.3d at 1380. The conduct about which she complained may have been distasteful and personally objectionable, but there was no evidence from which to find that a reasonable employee could have believed it was so "extreme" as to alter the conditions of her employment. *George*, 407 F.3d at 416

(quotation marks omitted).  Summary judgment was therefore appropriately granted to the BBG on the retaliation claims.

**B.**

Grosdidier's contentions regarding discrimination in the GS-13 hiring process fall into two categories: The first is a relative qualifications claim, in which she maintains that the disparity between her skills and experience of the other applicants was so stark as to support a claim of discrimination. The second claim is based on pretext, resting largely on her view that she proffered sufficient evidence to show that the BBG's reason for selecting Donangmaye — i.e., that he was better qualified — was pretextual, and that this sufficed to survive summary judgment.

Because the BBG has proffered a legitimate, non-discriminatory reason for the selection of Donangmaye, the court need not apply the familiar *McDonnell Douglas* burden-shifting framework; in such situations, the burden-shifting framework evaporates and the remaining question becomes one of discrimination.  *See Pardo-Kronemann*, 601 F.3d at 603; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  In assessing the legitimacy of the proffered reason and the ultimate question of discrimination, the court looks to "(1) the plaintiff's *prima facie* case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff . . . or any contrary evidence that may be available to the employer . . . ."  *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc).

To prevail on a relative qualifications claim, Grosdidier must show that she is "*significantly* better qualified for the job than [the applicant] ultimately chosen."  *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008) (quoting

*Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006)). The evidence showed that Grosdidier had more experience as an editor than Donangmaye. But the evidence also showed that Donangmaye had more internet and television broadcasting experience than Grosdidier, which is relevant to the position described in the official posting. Grosdidier conceded that Donangmaye had superior qualifications in these areas during the EEO investigation, and although critical of his performance nowhere suggests that he was unqualified for the position. The picture that emerges from the evidence, even viewed most favorably to Grosdidier, is one in which both applicants had different levels of expertise in various domains relevant to the GS-13 position. Neither stood out to the degree necessary, however, to meet the criteria for a relative qualifications claim.

The evidence of pretext is stronger. Grosdidier points to Dia's tailoring of the job description to fit Donangmaye's skill set, the reduction of her editing duties, the "arbitrary" evaluation methods used by the interview panelists, two panelists' decisions to destroy their notes from the interview process, and the panelists' failure to give proper weight to the applicants' editing experience for a job styled a Senior Editing position. This evidence was, she maintains, sufficient to survive summary judgment and the district court thus erred in applying a "pretext plus" standard, requiring her to come forward with direct evidence of discrimination beyond evidence of pretext. But "the circumstances of some cases may render evidence undercutting the employer's explanation insufficient to infer discrimination," *Aka*, 156 F.3d at 1292, and this is one such case. Rather than applying a "pretext plus" standard, as Grosdidier suggests, the district court asked simply whether there was sufficient evidence to rebut the BBG's nondiscriminatory reason for selecting Donangmaye, and found there was not, *see Grosdidier*, 774 F. Supp. 2d at 106. We agree for the following reasons.

First, a reasonable juror could not infer from the evidence of preselection that the legitimate nondiscriminatory reason the BBG gave for selecting another candidate over Grosdidier was not the actual reason. True, there is evidence that Dia crafted the job description to include TV hosting and website programming, tasks Donangmaye was doing regularly and Grosdidier did only occasionally. And he diminished Grosdidier's editing responsibilities in the months leading up to the GS-13 position announcement. But the employer's decision to consolidate hosting duties for a particular program with editorial and internet responsibilities in a single position merely suggests a preference for a particular constellation of qualifications in its candidate of choice, not unlawful Title VII discriminatory preselection. *Cf. Goostree v. Tennessee*, 796 F.2d 854, 861 (6th Cir. 1986); *Kennedy v. Landon*, 598 F.2d 337, 341 (4th Cir. 1979). The discretion to package certain skills in a single position, as here, remains with the employer, unless it involves an attempt to exclude members of a protected class from gaining access to the position. *Cf. Adeyemi*, 525 F.3d at 1227. The evidence regarding the particular combination of job qualifications does not suggest an attempt to mask an alternative, non-merit-based reason for selecting Donangmaye.

Second, the evidence of an allegedly "arbitrary" selection process is not probative of pretext. Grosdidier suggests evidence that the interview panelists failed to emphasize editing experience during the selection process, diverged in their accounts of the applicants' qualifications, and arbitrarily assessed and scored the interviewees shows that the BBG has attempted to conceal the discriminatory purpose behind its decision to reject Grosdidier for the GS-13 position. At most, however, the evidence shows an undisciplined but legally adequate selection process. In *Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180 (D.C. Cir. 1996), the court emphasized that "[e]vidence indicating that an employer

misjudged an employee's performance or qualifications is . . . relevant to the question whether its stated reason is a pretext masking prohibited discrimination." *Id*. at 1183. Such evidence of pretext might include "an error too obvious to be unintentional." *Id.* But absent evidence of pretext or discriminatory motive, the court "must respect the employer's unfettered discretion to choose among qualified applicants." *Id.*

Viewing the evidence most favorably to Grosdidier also does not show that the panelists made any glaring errors as part of their role in the selection process, and the panel's contemporaneous written justification for their recommendation that Donangmaye be selected hews closely to his qualifications and the criteria listed in the job posting. Specifically, the panel's explanation referred to Donangmaye's combined internet, print, radio, and television experience, his initiative in seeking training in the VOA's website editing platform, and his interpersonal and leadership skills, among others. The knowledge, skills, and ability factors in the GS-13 job description mention similar considerations, including "[b]road [k]nowledge of the principles, practices, and procedures of journalistic writing and editing for radio, TV and internet," "[k]nowledge of . . . internet techniques and practices," and "[s]kill in . . . maintaining effective and respectful working relationships." Although there is evidence that, when deposed months after the interviews, the panelists were unable to clearly articulate the factors they had used in evaluating the applicants, such evidence is insufficient for a reasonable juror to find pretext in light of the panel's coherent and contemporaneous documentation of the logic underlying its recommendation.

Grosdidier's focus on the scoring methodology used by the panel does not alter the analysis. The evidence shows that the numerical scores were of minimal significance; Dia informed the panel of the need to score the applicants only after the panel

had reached its decision and issued its written explanation. The panelists assigned numerical values to the applicants in an *ex post* fashion that reflected the ranking they had already explained to Dia in writing. An inability to clearly articulate the reasoning behind the specific allocation of numerical scores speaks less to any effort to mask an alternative unlawful purpose behind their decision and more to a sloppiness in organizing this aspect of the interview process. The less-than-clear scoring methodology may indicate a lack of precision on the part of the panel in executing this last-minute duty, but it does not suggest anything "fishy" was taking place. *Salazar v. Wash. Metro. Transit Auth.*, 401 F.3d 504, 508 (D.C. Cir. 2005) (quoting *Fischbach*, 86 F.3d at 1184) (quotation marks omitted).

More troubling is the decision by two panelists to destroy their notes despite an EEOC regulation requiring them to maintain them for at least one year, 29 C.F.R. § 1602.14, *supra* note 1. The panelists were experienced BBG employees, all of whom had previously served on selection panels. Although one complete set of notes exists along with all of the materials the applicants submitted and the panel's contemporaneous written explanation of their recommendation, the missing notes could have provided a more complete picture of what transpired during the interview process, especially regarding the types of questions the panelists asked generally and of specific applicants and their focus on particular qualities of an applicant. The destroyed notes were relevant to Grosdidier's challenge to her non-selection and their destruction deprived her of evidence that could have been useful in supporting her arguments that the official reason given for hiring Donangmaye was pretextual. Nonetheless, the district court denied Grosdidier's motion for an adverse presumption because there was "insufficient evidence in the record to support a finding of bad faith." *Grosdidier*, 774 F. Supp. 2d at 104. This was error.

This court has recognized the negative evidentiary inference arising from spoliation of records. *See Webb v. D.C.*, 146 F.3d 964 (D.C. Cir. 1998); *Shepherd v. Am. Broad. Co.*, 62 F.3d 1469 (D.C. Cir. 1995). In *Talavera*, 638 F. at 311–12, the court held, in accord with other circuit courts of appeals, that a Title VII plaintiff was entitled to an adverse inference jury instruction after the employer negligently destroyed the notes documenting her interview for a vacant position in violation of the same records retention EEOC regulation on which Grosdidier relies. In that case, the employer defended on the ground that the plaintiff's non-selection was based on her poor performance during an interview. *See id.* at 312. In concluding the plaintiff was entitled to an adverse spoliation instruction, the court considered whether the plaintiff was a "member of the classes sought to be protected" by the record retention regulation and whether "[t]he destroyed records were relevant" to the challenge to the employer's proffered reason for not selecting the plaintiff. *Id.* The court did not hold that the spoliation inference is available only upon a showing that the employer destroyed the records in bad faith. To the contrary, the spoliation inference was appropriate in light of the duty of preservation notwithstanding the fact that the destruction was negligent. *Id.* Similarly, the Second and Fourth Circuits do not require evidence of bad faith as a prerequisite to approval of a spoliation inference in the Title VII context. *See Buckley v. Mukasey*, 538 F.3d 306, 322–23 (4th Cir. 2008); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. 2001); *but see Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010); *Turner v. Pub. Serv. Co. of Col.*, 563 F.3d 1136, 1148–50 (10th Cir. 2009); *Caparotta v. Entergy Corp.*, 168 F.3d 754, 756 (5th Cir. 1999). After all, there are instances where the court can determine the likely relevance of destroyed evidence without a showing of bad faith destruction. Where the evidence is relevant to a material issue, the need arises for an inference to

remedy the damage spoliation has inflicted on a party's capacity to pursue a claim whether or not the spoliator acted in bad faith.

As a Title VII litigant, Grosdidier is within the class protected by the EEOC regulation, and the destroyed notes are likely to have had information regarding her responses and those of the other applicants during the interview as well as the types of questions asked of her and other applicants, all of which could be relevant to her contention that the BBG is hiding the real reason for its selection decision. Grosdidier is therefore entitled to an adverse inference, albeit not her requested inference, which was tantamount to a directed verdict. In moving for a spoliation inference, however, she identified, alternatively, a list of specific adverse inferences regarding the content of the destroyed notes. The existence of some evidence of what the panelists were thinking, including the interview notes of one panelist, multiple contemporaneous writings regarding the reasoning behind the panel's recommendation, and application materials of other applicants, weighs in favor of limiting the scope of the inference, but not in denying any inference at all. Unlike in *Talavera*, 638 F.3d at 312, where the non-discriminatory reason for the plaintiff's non-selection turned on her performance during an interview, there is no evidence to suggest Grosdidier's interview performance played the same pivotal role. Under the circumstances, a permissive inference bounded by constraints of reason is appropriate – i.e., the factfinder may draw reasonable inferences in favor of Grosdidier based on the non-accidental destruction of two of the three sets of interview notes.

Nevertheless, even if a factfinder could reasonably infer that the destroyed notes contained information that might be favorable to Grosdidier, favorable evidence is not in all instances equivalent to evidence that would permit Grosdidier to survive summary judgment. *See Aka*, 156 F.3d at 1292. The

inference Grosdidier requires must be sufficient to create a genuine issue of material fact, not simply one that lends some support to her pretext contention.  Grosdidier requested such a spoliation inference, including that the interview panelists considered her to have superior qualifications.  But this would not be a reasonable inference in light of the evidence of the relative qualifications of the applicants and the panel's evaluation of their qualifications.  Neither does the evidence support a reasonable inference that the notes would likely contain information that the BBG is falsely defending on the ground that it selected Donangmaye for his knowledge, skills, and abilities.  Even if it would be reasonable to infer that the destroyed notes included evidence corroborating that Grosdidier performed well in the interview or that different interviewers emphasized different qualifications of the applicants, other evidence, including the panel's contemporaneous written explanation for its recommendation in view of the skill sets for the position, would not permit a reasonable finding that the destroyed notes would have established pretext, let alone unlawful discrimination.  For this reason, the denial of Grosdidier's request for an adverse spoliation inference was harmless error.

Accordingly, we affirm the district court's grant of summary judgment.