Dwight E. ROBBINS, Appellant

v.

**DISTRICT OF COLUMBIA, a Municipal Corporation, Appellee.**

No. 15-7072
September Term, 2015

United States Court of Appeals, District of Columbia Circuit.

Filed: June 10, 2016

Camilla Carolyn McKinney, Esquire, Attorney, McKinney & Associates, PLLC, Washington, DC, for Plaintiff–Appellant.

Holly Michelle Johnson, Stacy Anderson, Assistant Attorneys General, Loren L. AliKhan, Deputy Solicitor General, Todd Sunhwae Kim, Solicitor General, Office of the Attorney General, District of Columbia, Office of the Solicitor General, Washington, DC, for Defendant–Appellee.

Before: Tatel and Millett, Circuit Judges, and Silberman, Senior Circuit Judge.

## JUDGMENT

Per Curiam

This appeal was considered on the briefs of the parties and the record from the United States District Court for the District of Columbia. *See* FED. R. APP. P. 34(a)(2); D.C. CIR. R. 34(j). The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). It is

**ORDERED AND ADJUDGED** that the district court's judgment be **AFFIRMED.**

Dwight Robbins, an African–American male, alleges that his former employer, the District of Columbia Public Schools ("District"), retaliated against him for opposing racially discriminatory practices in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* The district court granted summary judgment to the District. We affirm because Robbins failed to adduce any evidence from which a reasonable jury could find that he opposed a practice made unlawful under Title VII.

As relevant here, Title VII prohibits employers, including District of Columbia agencies, from discriminating against their employees on the basis of race. *See* 42 U.S.C. §§ 2000e-2(a) & 16(a); *Singletary*

*v. District of Columbia,* 351 F.3d 519, 523 (D.C. Cir. 2003). Title VII also makes it unlawful to discriminate or retaliate against any employee "because he has opposed any practice made an unlawful employment practice by this subchapter," or because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a).

Robbins argues that the District retaliated against him because he opposed a practice made unlawful by Title VII. To prevail, Robbins had to show, with summary-judgment caliber evidence that a reasonable jury could credit, "(1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." *McGrath v. Clinton,* 666 F.3d 1377, 1380 (D.C. Cir. 2012). Although such "opposition activity may be protected even though the employer's practices do not amount to a violation of Title VII, the employee-plaintiff must have a good faith and reasonable belief that the practices are unlawful" under that statute. *Grosdidier v. Broadcasting Bd. of Governors,* 709 F.3d 19, 24 (D.C. Cir. 2013).

Following the elimination of his prior position for budgetary reasons, the District placed Robbins at Jefferson Middle School as a physical education teacher for the 2010–2011 school year. Robbins applied for an open full-time position at that school for the following academic year, but Principal Patricia Pride hired someone else. Robbins alleges that he was passed over for the job in reprisal for his opposition to discriminatory practices at the school. Namely, Robbins asserts that he had previously "complained to Ms. Pride of the unfair distribution of classrooms to teach-

ers, with race being a factor," and that "[w]hen [he] saw no efforts at resolution concerning the injustice, he advised Ms. Pride that the EEOC could become involved." J.A. 104.

The problem for Robbins is that the summary-judgment record contains no evidence whatsoever that he ever mentioned or otherwise indicated to Pride, or to anyone else, anything about "race being a factor" in classroom assignments. Nor has Robbins identified any evidence suggesting that he ever opposed any racially discriminatory practice by Pride or the District for which his non-selection could possibly constitute retaliation. As a result, nothing in the record would allow a reasonable jury to conclude that Robbins' termination had anything to do with his complaints about employment activities that Title VII proscribes.

Robbins' alleged "protected activity" began with a letter and an email he sent to Pride on February 14, 2011, in which he complained that he and his fellow physical education teacher, Howard Mebane, had been assigned homeroom classes, while three other non-physical-education teachers were not. Robbins wrote that, in his experience, "normally Physical Education Teachers are not assigned homeroom because of the need to get the gymnasium ready for classes." J.A. 203 (letter); *see also id.* at 147 (email).[1] He further asserted that "[t]he scheduling of homeroom should be done on an equal basis" because, "[i]f Mr. Mebane and I, the only PE teachers at Jefferson MS, both have a homeroom assignment, we will end[ ] up covering both homeroom groups if he is/or I am absent." *Id.* Robbins then identified "three other teachers without homerooms," and

concluded that it was "not fair" for Mebane, who was part-time, and Robbins to have homerooms "while three teachers who are assigned to Jefferson on a full-time basis have none." *Id.*

Following a meeting with Robbins, Pride sent Robbins an email declining to change the assignments, as "[she did] not see a difference in classroom set-up for PE teachers that is any more demanding than science teachers to social studies teacher[s]." J.A. 225. Robbins' response was terse: "The time it has taken you to reply speaks for it self [*sic*]. EEOC." *Id.* Robbins claims he also mentioned the Equal Employment Opportunity Commission in a "verbal" conversation with Pride. J.A. 32. He did not at that time file a complaint with the EEOC, but instead initiated grievance proceedings with the teachers' union.

There is not a single word about race or any other protected status in Robbins' correspondence with Pride. He did not mention the race or protected status of any of the individuals mentioned, nor did he indicate any belief whatsoever that the homeroom assignments were the result of unlawful discrimination.[2] Instead, his focus was on a perceived inequality of assignments based on the *academic disciplines* of the teachers, a fact he openly conceded multiple times in his deposition testimony. *See* J.A. 28 (the problem was that homeroom assignments were not "equally distributed according to either subject matter * * * or discipline"); J.A. 29–30 ("Disciplines. Equal distribution. If you have three English classes, okay, and you have three P.E. classes, and two English teachers have two home rooms, the two P.E. teachers have two home rooms. But if you

---

1. The letter appears to be a revised version of Robbins' email to Pride. Both documents are dated February 14, 2011, and they are largely identical in content. *See* J.A. 147 and 203.

2. Howard Mebane is also an African–American male.

have an English group that has four home rooms, then that's not equal."). Significantly, when asked at his deposition why he complained to Pride, Robbins expressly denied doing so because of race and instead reiterated that the issue was unequal distribution of homerooms across academic disciplines. *See* J.A. 31 (Q: "And when you made your complaint to Ms. Pride, did you complain that it was because of race, you thought, that the distribution was unequal?" A: "No. I actually did it because the discipline wasn't equal." Q: "Because of the disciplines?" A: "Yes. Because there were two English teachers on that floor that didn't have home rooms.").

But unequal treatment based on academic discipline, even if true, is not "a practice made unlawful by Title VII." *McGrath*, 666 F.3d at 1380. Accordingly, any action allegedly taken against Robbins due to his opposition to the homeroom assignments cannot qualify as retaliation under Title VII. Simply put, without more, discrimination based on academic disciplines "is not an act 'made unlawful by this subchapter'—i.e., by Title VII—and hence is not subject to its anti-retaliation provision." *Id.* at 1382.

In addition, there is no evidence in the record at all that Robbins believed in good faith that such academic-discipline-based "discrimination" was prohibited by Title VII. Nor would it have been reasonable for him to do so. *See McGrath*, 666 F.3d at 1380 ("[I]f the practice the employee opposed is not one that could reasonably and in good faith be regarded as unlawful under Title VII, this element is not satisfied."); *see also Clark County School Dist. v. Breeden*, 532 U.S. 268, 270–271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (even assuming the "reasonable, good faith belief" interpretation of the Act is correct, "no one could reasonably believe that the incident * * * violated Title VII").

Robbins' threat to contact the EEOC does not help his cause. The bare invocation of "EEOC," divorced from any allegation of unlawful discrimination on a statutorily prohibited ground, does not constitute protected activity *under Title VII*. Indeed, the EEOC hears complaints under a broad variety of non-discrimination statutes in addition to Title VII, including those that prohibit age, disability, and genetic-information discrimination. *See* 42 U.S.C. § 12117(a); 29 U.S.C § 633a; 42 U.S.C. § 2000ff. Robbins' naked reference to the "EEOC" thus does not provide any basis for inferring opposition to racial discrimination. *Cf. Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006) ("Not every complaint garners its author protection under Title VII."); *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 727–729 (7th Cir. 2003) (complaining about being "picked on," without mentioning discrimination or otherwise indicating that gender was an issue, does not constitute protected activity).

Robbins also contends (Br. 22-25) that the district court abused its discretion in granting summary judgment on a ground "not argued or presented by" the District—that is, that Robbins had not opposed any employment practice made unlawful by Title VII. But the district court may grant summary judgment "on grounds not raised by a party" as long as the court "giv[es] notice and a reasonable time to respond." FED. R. CIV. P. 56(f); *see also Stewart v. Credit Bureau*, 734 F.2d 47, 53 n.10 (D.C. Cir. 1984) ("*Sua sponte* summary judgments are justified only after 'the party against whom the judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted.'") (quoting 10A, C. Wright, A. Miller, M. Kane, Federal Practice and Procedure § 2720 at 27). Not only

did Robbins describe his alleged protected activity in detail in his opposition to summary judgment, but he also addressed the issue in a sur-reply that the district court allowed after he was put on notice that the District contested whether Robbins had opposed a discriminatory practice. Beyond that, because "a plaintiff seeking to defeat summary judgment on [his] retaliation claim must point to evidence from which a reasonable juror could conclude that the employer took adverse employment action against [him] in retaliation for [his] protected activity," *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015), Robbins can hardly profess unfair surprise that he was expected to prove an essential element of his claim.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a).