**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| KENNETH ELLIOTT, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 15-1737 (RC) |
| | : | | |
| v. | : | Re Document No.: | 18 |
| | : | | |
| R. ALEXANDER ACOSTA,[1] *Secretary,* | : | | |
| *United States Department of Labor*, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff Kenneth Elliott, an African American male and an employee of the U.S.

Department of Labor ("DOL"), alleges that DOL discriminated against him on the basis of race

and/or sex when it failed to select him for three separate promotions. DOL moves for summary

judgment, offering qualification-based explanations for each hiring decision. While DOL is

entitled to summary judgment with respect to two of the hiring decisions, the Court finds that

DOL improperly destroyed interview notes that corroborate its rationale for the one remaining

decision, that Plaintiff is entitled to an inference that the notes would have contained information

favorable to his claim, and that his claim regarding that position survives DOL's motion.

Accordingly, the Court grants in part and denies in part DOL's motion.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), R. Alexander Acosta is substituted
as Secretary for his predecessor Thomas Perez.

## II. BACKGROUND

Plaintiff Kenneth Elliott has been a Labor Economist in the DOL's Bureau of Labor Statistics ("BLS"), Office of Compensation and Working Conditions since March 1992. EEO Affidavit of Kenneth Elliott ("Elliott Aff.") at 2, Ex. E, ECF No. 18-2. He is currently employed at the GS-13 grade level. Elliott Aff. at 2.

In March 2014, the BLS, Office of Compensation and Working Conditions, Office of Compensation Levels and Trends ("OCLT") posted Vacancy Announcement No. MS-14-BLS-CW-018, which advertised two GS-14 positions: the position of Branch Chief for Survey Information and Publications ("Branch Chief for SI&P") in the Division of Compensation Data Analysis and Planning and the position of Branch Chief for Data Capture and Review ("Branch Chief for DCR") in the Division of Compensation Data Estimation. Ex. A, ECF No. 18-2. The BLS Division of Human Resources and Organization Management prepared a single certificate of eligible candidates covering both vacancies. Affidavit of Phillip Doyle, ("Doyle Aff.") at 3, Ex. B, ECF No. 18-2. Mr. Elliott applied for and was deemed eligible for both positions. *See* Elliott Aff. at 3.

Phillip Doyle—a white man who was then Assistant Commissioner for OCLT—was involved in selecting candidates for the Branch Chief for SI&P position while Frances Harris—an African American woman who is Division Chief of Compensation and Data Estimation in OCLT—was involved in selecting candidates for the Branch Chief for DCR position. Doyle Aff. at 1–2; Affidavit of Frances Harris ("Harris Aff."), at 2–3, Ex. C, ECF No. 18-2. Mr. Doyle and Ms. Harris each independently reviewed the list of eligible applicants to identify candidates to jointly interview. Doyle Aff. at 4. Mr. Doyle and Ms. Harris also jointly prepared interview questions to ask all candidates. Doyle Aff. at 4; Affidavit of Frances Harris ("Harris Aff.") at 3,

Ex. C, ECF No. 18-2.  Likewise, Mr. Doyle and Ms. Harris conducted interviews together and discussed reactions to the candidates after the interviews.  Doyle Aff. at 3; Harris Aff. at 2, 8.

Thirteen or fourteen individuals interviewed with Ms. Harris and Mr. Doyle.  Doyle Aff. at 11 (listing fourteen interviewees); Harris Aff. at 10 (listing thirteen interviewees).  Of the candidates, Mr. Doyle selected Jesus Ranon-Hernandez, a Hispanic male, for the position for Branch Chief for SI&P.  Doyle Aff.  at 12; Pl.'s Statement of Material Facts in Dispute ("Pl.'s SMF") ¶ 22.  According to Mr. Doyle, Mr. Ranon-Hernandez was selected based on his superior interview.  In his interview, Mr. Ranon-Hernandez "demonstrated his ability to juggle multiple projects by citing examples from his current position and during a previous assignment [in OCLT]," "provided details of the types of projects he coordinated and the challenges they presented," and "used a role-playing strategy to demonstrate how he would coach and mentor an employee."  Doyle Aff. at 12.  Mr. Ranon-Hernandez also explained the challenges he faced as a new employee in another BLS office and explained how he worked with BLS staff to resolve problems, gain the confidence of others, and encourage the development of junior staff.  Doyle Aff. at 12.  In addition, Mr. Ranon-Hernandez described what Mr. Doyle regarded as a "low-key approach to dealing with conflict that included non-confrontational fact-finding and an emphasis on problem resolution."  Doyle Aff. at 12.

Though Mr. Doyle observed that "to varying degrees" Mr. Elliott met most of the requirements for the Branch Chief of SI&P position, Mr. Doyle described Mr. Elliott's interview in less than glowing terms and inferior to that of Mr. Ranon-Hernandez.  According to Mr. Doyle, Mr. Elliott demonstrated only "some ability to juggle conflicting assignments" and only "for limited periods."  Doyle Aff. at 10.  Likewise, according to Mr. Doyle, Mr. Elliott failed to "demonstrate how he would coach and mentor an employee."  Doyle Aff. at 10.  In Mr. Doyle's

opinion, Mr. Elliott's response to a hypothetical conflict situation "provided little detail." Doyle Aff. at 10. In addition, Mr. Doyle was surprised to hear Mr. Elliott mention during the interview his "past performance [and] past conduct issues," such as his attendance issues and his non-completion of a BLS leadership development program. Doyle Dep., Ex. 7 at 59:15-60:8.

After Mr. Doyle had "made [his] selection decision to choose Jesus Ranon-Hernandez," he reports that he had a discussion with Mr. William Wiatrowski, Associate Commissioner, Senior Executive Service at BLS and Mr. Doyle's immediate superior. Doyle Aff. at 8; Affidavit of William J. Wiatrowski ("Wiatrowski Aff.") at 2, Ex. 8, ECF No. 22-10. Mr. Doyle states that he "informed Mr. Wiatrowski about the reasons that [he] had chosen Mr. Ranon-Hernandez," but he "did not discuss with Mr. Wiatrowski the reasons that [he] did not choose the other candidates who were interviewed." Doyle Aff. at 8. According to Mr. Doyle, "Mr. Wiatrowski did not have any objections to [the] selection decision and he concurred with it." Doyle Aff. at 8.

Of the candidates interviewed for the position of Branch Chief for DCR, Ms. Harris selected Neil McIntyre, a white man. Harris Aff. at 10. According to Ms. Harris, Mr. McIntyre was selected because, among other things, he was "a seasoned team leader engaged in day-to-day production for nearly 15 years." Harris Aff. at 12. Ms. Harris also reportedly valued that Mr. McIntyre had "both broad and specific, current and historical knowledge of review processes, systems, and tools," and that "he has leveraged this knowledge." Harris Aff. at 12. In addition, Mr. McIntyre "focuse[d] on building a team, leverage[d] the unique strengths of each team member, and s[ought] opportunities to coach, mentor, direct, and empower[] the team as a whole to higher performance." Harris Aff. at 12. Ms. Harris observed that Mr. McIntyre had "long standing experience leading and developing larger teams consisting of eight to ten staff employees." Harris Aff. at 12. By contrast, Ms. Harris reportedly believed that Mr. Elliott had

"dated" knowledge of certain subjects. Harris Aff. at 12. She also found that while "Mr. McIntrye focused attention on building, guiding, bringing together, collaborating, and leading people to success," "Mr. Elliott mainly focused on how he individually accomplished assigned tasks, but did not present thorough examples which demonstrated his ability to collaborate with and develop the skills of other staff members." Harris Aff. at 12–13. Furthermore, in his interview, Mr. Elliott "did not note extensive or recent familiarity with all the relevant production processes" and "did not provide answers that reflected the desired experience with team development" or "highlight achievements that reflected his ability to manage others to achieve results." Harris Aff. at 9.

Like Mr. Doyle, Ms. Harris consulted with others before extending Mr. McIntyre an offer of employment. Specifically, Ms. Harris shared her top two candidates with Mr. Doyle, who was Ms. Harris's immediate supervisor. Harris Aff. at 7. However, according to Ms. Harris, "Mr. Doyle had no input on [her] consideration of [Mr. Elliott] or any other candidate." Harris Aff. at 8. Ms. Harris also presented Mr. Wiatrowski—her second-line supervisor—with a proposed justification document, which clarified the reasons that she had selected Mr. McIntyre. Wiatrowski Dep. 51:13-52:11, Ex. 4, ECF No. 22-6. By email, Ms. Harris requested "any comments or suggested changes" on the justification document. Wiatrowski Dep. 51:17-52:1; *see also* Wiatrowski Dep. 59:2-14 (acknowledging that, under DOL's selection process Ms. Harris officially "ma[d]e a recommendation to [Mr.] Doyle, [Mr.] Doyle ha[d] a discussion with [Mr. Wiatrowki], [then] it [was] signed off by the commissioner"). Mr. Elliott learned of his non-selection for both positions in May 2014. *See* Elliott Aff. at 7.

That same month, the BLS posted Vacancy Announcement No. MS-14-BLS-CW-062, which advertised the position of Branch Chief for Procedures and Program Development

("Branch Chief for PPD") in the OCLT's Division of Compensation Data Analysis and Planning. Ex. K, ECF No. 18-3. Mr. Elliott applied for and was deemed eligible for the position. Elliott Aff. at 10–11. Bryandt Dickerson, an African American woman and a Supervisory Economist at the GS-15 level, received the certificate of eligible candidates and conducted all nine interviews for the position. Elliott Aff. at 10; Affidavit of Bryandt Dickerson ("Dickerson Aff.") at 1–2, 12, 17, Ex. M, ECF No. 18-3. Of the candidates, Ms. Dickerson selected Renee Marshall and did not select Mr. Elliott. Dickerson Aff. at 14. Ms. Dickerson offered that she did not select Mr. Elliott because he lacked recent economic survey experience, which she gleaned because during his interview Mr. Elliott seemed unable to provide her with examples of his experience working with recent survey data. Dickerson Aff. at 14; Dickerson Dep., 61:18-63:4, 65:21-66:5, Ex. N, ECF No. 18-4. According to Ms. Dickerson, "[a]fter [she] made [her] selection decision," she shared her reasons for selecting Ms. Marshall with Mr. Doyle and Mr. Wiatrowski, two supervisors in her chain of command. Dickerson Aff. at 14. However, her "discussions with Mr. Doyle and Mr. Wiatrowski did not positively or adversely impact [Mr. Elliott's] non-selection for the position." Dickerson Aff. at 14.

Mr. Elliott initiated the EEO complaint process on May 9, 2014. Compl. ¶ 7; Def.'s Answer to Pl.'s Am. Compl. ("Def's Answer") ¶ 7. The next month, he filed a formal complaint of discrimination. Compl. ¶ 7; Def.'s Answer ¶ 7. The Final Agency Decision in this matter was issued in July 2015. Compl ¶ 7; Def.'s Answer ¶ 7. Mr. Elliott filed the present action in October 2015. Currently before the Court is DOL's motion for summary judgment.

# III. LEGAL STANDARDS

## A. Summary Judgment

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The inquiry under Rule 56 is essentially "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the party opposing summary judgment must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In doing so, the nonmovant may not rely on "statements that are impermissible hearsay or that are not based on personal knowledge." *Shuler v. District of Columbia*, 744 F. Supp. 2d 320, 327 (D.D.C. 2010). In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the nonmovant, *see Anderson*, 477

U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## B. Title VII Framework

Title VII of the Civil Rights Act of 1964 promises that "[a]ll personnel actions affecting employees . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a). To prevail on a claim brought under Title VII, a plaintiff must show that he suffered an adverse employment action because of his race, color, religion, sex, or national origin. *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). Direct evidence of discrimination generally entitles the plaintiff to a jury trial. *See Vatel v. All. of Auto Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011). In the absence of direct evidence of discrimination, courts typically assess a claim under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under that framework, a plaintiff is required to first make out a *prima facie* case of discrimination by showing that he "(1) is a member of a protected class; (2) suffered an adverse employment action; and that (3) the unfavorable action gives rise to an inference of discrimination." *Nurriddin v. Bolden*, 818 F.3d 751, 758 n.6 (D.C. Cir. 2016). Once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to supply "some legitimate, nondiscriminatory reason for the [action in question]." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (alteration in original). After the employer makes such a showing, the plaintiff must show that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *George v. Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

An employee may not show pretext by "simply criticizing the employer's decisionmaking process." *Hairston v. Vance–Cooks*, 773 F.3d 266, 272 (D.C. Cir. 2014). "Even if a plaintiff 'was victimized by poor selection procedures,' [courts] may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" *Id.* (quoting *Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996)). Rather, "[t]he plaintiff must identify evidence from which a reasonable jury could find that the employer's stated reasons were 'phony.'" *Moeller v. LaFleur*, 246 F. Supp. 3d 130, 140 (D.D.C. 2017) (quoting *Fischbach*, 86 F.3d at 1183). In addition, "[t]he evidence of record must be such that a reasonable jury could not only disbelieve the employer's reasons, but conclude that the real reason the employer took a challenged action was a prohibited one." *Walker v. Johnson*, 798 F.3d 1085, 1093 (D.C. Cir. 2015); *see also Mount v. Johnson*, 174 F. Supp. 3d 553, 561 (D.D.C. 2016) ("[P]roviding sufficient evidence for a jury to reject the defendant's reason is not sufficient 'if it is nevertheless impossible for a rational factfinder to conclude the action was discriminatory.'" (quoting *Rochon v. Lynch*, 139 F. Supp. 3d 394, 404 (D.D.C. 2015))).

The D.C. Circuit has clarified that district courts are to abbreviate the customary inquiry under certain circumstances: "In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Instead, "the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color,

religion, sex, or national origin?" *Id.* To answer this question, district courts consider "all the evidence, including '(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its action; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer).'" *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (quoting *Waterhouse v. District of Columbia*, 298 F.3d 989, 992–93 (D.C. Cir. 2002)).

## IV. ANALYSIS

DOL offers legitimate non-discriminatory reasons for the three hiring decisions under consideration in this case. Namely, DOL asserts that stronger candidates than Mr. Elliott were selected for each Branch Chief position. Accordingly, the Court must focus its attention on whether Mr. Elliott has produced sufficient evidence for a reasonable jury to find that DOL's asserted non-discriminatory reasons were not the actual reasons for its hiring decisions and that, instead, DOL intentionally discriminated against Mr. Elliott on the basis of race and/or sex.

Plaintiff presents three primary arguments in an attempt to fend off summary judgment for DOL. First, Plaintiff argues that triable issues of material fact persist concerning whether Mr. Wiatrowski truly acted as the selecting official who decided not to hire him for each of the positions. Second, Plaintiff asserts that all three selection processes were characterized by "subjectivity, bias, inconsistency, and the subjective application of subjective criteria," and that, on that basis, a reasonable jury could conclude that DOL's stated reasons for its hiring decisions were pretext. Finally, he contends that DOL's failure to retain certain documents related to two of the hiring decisions warrants an adverse inference against DOL and justifies sending this case to a jury. As explained below, Mr. Elliott has raised triable issues regarding his nonselection for the Branch Chief for PPD position, but not with respect to his nonselections for the Branch Chief

for SI&P and Branch Chief for DCR positions. Accordingly, the Court will grant in part and deny in part DOL's motion for summary judgment.

## A. Branch Chief for DCR

Mr. Elliott contends that two genuine issues of material fact preclude summary judgment for DOL on his claim regarding his nonselection for Branch Chief for DCR: (1) whether Mr. Wiatrowski—not Ms. Harris—acted as a selecting official for the position and (2) whether DOL improperly used subjective criteria to distinguish among candidates for the position. The Court concludes that Mr. Elliott has not raised genuine, triable issues. It therefore grants summary judgment for DOL on this claim.

### 1. Mr. Elliott Has Identified No Genuine Issue of Material Fact Regarding Whether Mr. Wiatrowski Acted as a Selecting Official

With respect to Mr. Elliott's nonselection for the position of Branch Chief for DCR, he first contends that a genuine issue of material fact exists regarding whether Mr. Wiatrowski (a white man), not Ms. Harris (an African American woman), was the real selecting official for the position. Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl's Opp'n to MSJ") at 9–13, ECF No. 22-1. According to Mr. Elliott, Ms. Harris made a mere recommendation to Mr. Doyle and then to Mr. Wiatrowski, who had final hiring authority and DOL has masked Mr. Wiatrowski's role to "conceal an institutionally subjective and biased decision-making process." Pl.'s Opp'n to MSJ at 3. Mr. Elliott apparently raises this purported issue in response to DOL's argument that the fact that Ms. Harris is an African American, like Mr. Elliott, might undermine his claim of race discrimination. *See* Def.'s MSJ at 11 (citing *Gonda v. Donahoe*, 79 F. Supp. 3d 284 (D.D.C. 2015)). In addition, Mr. Elliott seems to argue that Mr. Wiatrowski was the source of discrimination and that his participation in the selection process raises the specter of discrimination. The Court disagrees.

First, Mr. Elliott has identified no genuine dispute regarding Ms. Harris's role in the selection process. DOL regulations define "selecting official" as "a management official with the authority to recruit for and select candidates for vacant positions in his/her organization." DOL Personnel Regulations Chap. 335; Declaration of Nicole Peters ("Peters Decl.") ¶ 3. Even under Mr. Elliott's characterization of events, Ms. Harris—who helped develop the criteria listed in the vacancy announcement, authored interview questions, interviewed candidates, and selected a preferred candidate—is a selecting official under this definition.

Second, Mr. Elliott has identified no genuine dispute regarding Mr. Wiatrowski's role in the hiring process. No testimony or other evidence suggests that Mr. Wiatrowski recruited anyone to apply for the position or identified candidates for the vacancy. At most, the record shows that Ms. Harris consulted with Mr. Wiatrowski and Mr. Doyle—who acted as concurring officials, in DOL parlance—after Ms. Harris had already identified her preferred candidates. *See* Peters Decl. ¶¶ 6–10 (explaining the role of concurring officials in the DOL hiring process); Harris Aff. at 3 (noting that Mr. Doyle was "the approving official for [her] selection" for Branch Chief for DCF); Wiatrowski Dep. 51:13-52:21 (acknowledging that Ms. Harris asked Mr. Wiatrowski for feedback and to sign off on a document justifying the reasons that she had selected Mr. McIntyre for the position of Branch Chief for DCR). Furthermore, DOL does not dispute that Ms. Harris discussed her selection choice with superiors in her chain of command, namely Mr. Doyle and Mr. Wiatrowski. *See* Def.'s Reply at 4, ECF No. 24. In sum, nothing on record supports Mr. Elliott's insinuation that Mr. Wiatrowski's preferences steered the selection process for Branch Chief for DCR in any meaningful way. Mr. Elliott's "'conclusory allegations' and 'unsubstantiated speculation,' . . . 'do not create genuine issues of material

fact.'" *Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 61 (D.D.C. 2015) (quoting *Bonieskie v. Mukasey*, 540 F. Supp. 2d 190, 200 n.12 (D.D.C. 2008)).

Third, to survive a motion for summary judgment, a "plaintiff must identify evidence from which a reasonable jury could find that the employer's stated reasons were 'phony.'" *Moeller*, 246 F. Supp. 3d at 140. Even assuming that Mr. Wiatrowski had served as the "actual" selecting official because Ms. Harris's decision constituted only a recommendation, Mr. Elliott fails to explain exactly why this might lead a reasonable jury to infer that DOL's explanations for its hiring decision was pretext. The D.C. Circuit has explained that "[p]roviding more detailed information [about a personnel action] once litigation begins does not create a genuine issue of material fact." *Hairston*, 773 F.3d at 273. Here, further information about Mr. Wiatrowski's role in the hiring process in no way undermines Ms. Harris's explanation for her hiring decision, particularly because, as the Court just explained, there is no evidence that Mr. Wiatrowski did more than review and concur with Ms. Harris's selection. It is, rather, further information about the hiring process.

Furthermore, Mr. Elliott has not shown that any dispute about Mr. Wiatrowski's role in the selection process is material. Although not artfully presented, Mr. Elliott seems to argue that Mr. Wiatrowski was the source of discrimination and that, if Mr. Wiatrowski participated in the hiring process, a jury could infer that the selection process was tainted with discrimination and, accordingly, that DOL's stated reasons for declining to hire Mr. Elliott were pretext. *See* Pl.'s Opp'n at 5. Mr. Elliott claims that a jury might infer that Mr. Wiatrowski was the source of discrimination from comments Mr. Wiatrowski purportedly made to Mr. Elliott years ago about how Mr. Elliott "should be happy" that he has had "a good career" at DOL and has "reached the

GS-13 level."[2]  *See* Pl.'s Opp'n at 5; Elliott Aff. at 17.  In addition, Mr. Elliott claims that on another occasion Mr. Wiatrowski questioned whether Mr. Elliott "deserve[d]" an "outstanding rating" that an immediate supervisor had given him.[3]  Pl.'s Opp'n at 5; Elliott Aff. at 17.

This argument fails for at least two reasons.  First, "[t]hese statements . . . are neither explicitly racial nor infused with racial undertones based on common usage" and courts in this jurisdiction have been reluctant to "infer discriminatory intent if the words uttered are plainly lacking in racial animus."  *Hairston*, 773 F.3d at 256.  And, second, the D.C. Circuit has made clear that "isolated race-based remark[s] unrelated to the relevant employment decision c[an] not, without more, permit a jury to infer discrimination."  *Morris v. McCarthy*, 825 F.3d 658, 669 (D.C. Cir. 2016).  While such comments are not categorically immaterial, courts may conclude that, when viewed in the context of other evidence of record, the remarks would not permit a jury to infer discrimination.  *See id.* at 670–72 (describing cases where stray remarks were insufficient to create a jury question and distinguishing cases where racially charged statements were "pervasive[], sever[e]," or where the speaker played a significant role in the adverse action).  Here, even viewing the evidence in the light most favorable to Mr. Elliott—as

---

[2]  According to Mr. Elliott, in approximately 2007 or 2008, Mr. Wiatrowksi made these comments after Mr. Elliott asked about efforts to further his career at BLS.  Elliott Aff. at 17; *see* Elliott Dep. 28:13-29:8.  Mr. Elliott contends that Mr. Wiatrowksi had advised him to leave BLS, explaining that Mr. Elliott would not be promoted to the GS-14 level.  Elliott Aff. at 17.  Mr. Elliott also claims that two of his colleagues reported that Mr. Wiatrowski told them that Mr. Elliott would never be promoted to GS-14, but the record does not show when Mr. Elliott's colleagues reported this information.  *Id.*

[3]  At the time that Mr. Wiatrowksi made these alleged comments, Ms. Harris served as Mr. Elliott's first-line supervisor.  Elliott Aff. at 17.  Ms. Harris had rated Mr. Elliott "Outstanding," and Mr. Wiatrowski—Ms. Harris's first-line supervisor and Mr. Elliott's second-line supervisor—had to sign off on that rating.  *Id.*  Mr. Wiatrowski purportedly called Mr. Elliott into his office and told him, "I don't know if you deserve this [rating], but I am going to go ahead and sign it."  *Id.*  The record is not clear on when Mr. Wiatrowski allegedly made this comment.

this Court must—no reasonable jury could doubt DOL's stated reasons for its hiring decision based on these statements, which were unrelated to the hiring process at issue and were, in some cases, distant in time from it. In sum, the Court concludes that Mr. Elliott has failed to identify any genuine issue of material fact regarding Mr. Wiatrowski's role in hiring for the Branch Chief for DCR position.

### 2. Mr. Elliott Has Identified No Genuine Issue of Material Fact Regarding Subjectivity in the Hiring Process

Next, Mr. Elliott argues that the hiring process for the position of Branch Chief for DCR was "characterized by subjectivity, bias, inconsistency, and the selective application of subjective criteria." Pl.'s Opp'n to MSJ at 1–2, 13–19. Specifically, Mr. Elliott challenges Ms. Harris's reliance on criteria that he contends were not explicitly mentioned in—or that seemed to him to be inconsistent with—the standards mentioned in the written vacancy announcements. Pl.'s Opp'n to MSJ at 13–19. For example, he takes issue with the fact that Ms. Harris identified a candidate's ability to lead and to develop a successful team as "the most important criteria" for the Branch Chief for DCR position. Pl.'s Opp'n to MSJ at 14–15. He likewise questions Ms. Harris's choice to distinguish between "recent" and "dated" experience working with microdata. Pl.'s Opp'n to MSJ at 15. The Court concludes that Mr. Elliott has failed to identify any evidence of subjectivity or arbitrariness in the selection processes that might be probative of pretext.

The D.C. Circuit has acknowledged that an employer's strong reliance on subjective criteria may, at times, mask discrimination. *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1298 (D.C. Cir. 1998). But the Circuit has also made clear that "employers may of course take subjective considerations into account in their employment decisions." *Id.*; *see also Harris v. Grp. Health Ass'n, Inc.*, 662 F.2d 869, 873 (D.C. Cir. 1981) ("While it is true that subjective

criteria lend themselves to racially discriminatory abuse more readily than do objective criteria, there nonetheless are situations where employment decisions can, must, and should be made on the basis of subjective criteria."); *Kwon v. Billington*, 370 F. Supp. 2d 177, 186 (D.D.C. 2005) ("Title VII's concern that over reliance on subjective criteria might mask discrimination is not meant to render performance in an interview as an irrelevant consideration in personnel decisions."). Indeed, the Circuit's precedents clarify that there are limited circumstances where the subjectivity of hiring considerations might lead to an inference of pretext.

In *Hamilton v. Geithner*, 666 F.3d 1344 (D.C. Cir. 2012), the Circuit found that an employee's claims should have survived summary judgment where, among other things, the employer relied entirely on subjective considerations, such as "communications skills," to evaluate interview performance; the relevant skills were not emphasized in the job description; the selecting official failed to point to concrete examples of poor answers that might have grounded their subjective assessment in more objective facts; and there was evidence on record from which a reasonable jury could conclude that the plaintiff was significantly more qualified than the selected candidate. *Id.* at 1351–57. Similarly, in *Aka*, the Circuit determined that an employer could not rely solely on a plaintiff's purported lack of "enthusiasm" to explain its hiring decision where a jury could find that the plaintiff was markedly better qualified for the job and a jury could disbelieve the employer's explanation for its hiring decision. 156 F.3d at 1298–99. *Hamilton* and *Aka* provide that "[i]t is in these close cases, where the plaintiff's qualifications were significantly better than the selected candidate's, that the subjectivity of considerations lends itself to the inference of pretext." *St. John v. Napolitano*, 20 F. Supp. 3d 74, 97 (D.D.C. 2013); *see also Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007).

This case is unlike *Hamilton* and *Aka*. Most importantly, Mr. Elliott certainly has not demonstrated that he was significantly more qualified than Mr. McIntyre, the selectee for Branch Chief for DCR. Mr. Elliott apparently surmises that he was better qualified than Mr. McIntyre because Mr. McIntyre had not worked his entire career in the DOL national office as Mr. Elliott had. However, in *Stewart v. Ashcroft*, 352 F.3d 422 (D.C. Cir. 2003), the D.C. Circuit rejected this very same argument as a sufficient means of showing that a plaintiff was better qualified than a selectee. *Id.* at 429 ("[Plaintiff] relies heavily on the fact that he was already an SES employee, whereas [the selectee] was not. While this is true, it says little about the level of relative qualifications between the two men to serve as Chief."). And, in any event, courts are not to "second-guess how an employer weighs particular factors in the hiring decision." *Jackson*, 496 F.3d at 709. Thus, this Court cannot and will not tell DOL what type of experience it should have valued in conducting its hiring process. "[I]n cases where courts rely on the subjectivity of the criteria at issue, the deciding factor on summary judgment is often that 'a jury could reasonably find that the plaintiff was otherwise significantly better qualified than the successful applicant.'" *St. John*, 20 F. Supp. 3d at 97 (quoting *Aka*, 156 F.3d at 1298)). This is because where the differences between candidates are minor, "a reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006). Because Mr. Elliott has failed to show that he was more qualified than the selectee for this position, his claim cannot survive DOL's motion.

Furthermore, it is of limited significance that the vacancy announcement for Branch Chief for DCR did not mention each and every factor that the selecting official considered in

evaluating candidates. The record shows that the subjective criteria on which the hiring officials relied were neither unknown nor developed post-hoc. Indeed, the announcement plainly outlined that all qualified applicants would be evaluated on, among other things, Team Building, Accountability, Decisiveness, Decision Making/Problem Solving, and Planning and Evaluation. Ex. A at 4, ECF No. 18-2; Ex. K at 4, ECF No. 18-3. And even if DOL strayed from the specific criteria written in black and white, it committed no misstep. The D.C. Circuit has explained that "job descriptions are often phrased in general terms, and employers then make the ultimate hiring decision in light of more specific factors—such as their strategic priorities and goals at the time, the strengths and weaknesses of the applicant pool, and the overall skills of and gaps in their existing workforce." *Jackson*, 496 F.3d at 708. In fact, the Circuit has noted that "an employer may select 'a candidate who on paper is less qualified for other reasons, such as subjective reactions that emerge in the interview.'" *Id.* at 709 (quoting *Aka*, 156 F.3d at 1294 & n.10). In sum, this is not a situation where the fact that the defendant relied on subjective considerations raises an inference of discrimination.[4]

***

Mr. Elliott has not identified any issue of material fact concerning Mr. Wiatrowski's role in the selection process for Branch Chief for DCR. The record reveals that Mr. Wiatrowski played only a minimal role in the selection process, while Ms. Harris's preferences drove the

---

[4] In addition, unlike in *Hamilton* and *Aka*, the hiring official in this case provided concrete examples to explain her subjective assessments. For example, Ms. Harris explained that while "Mr. McIntrye focused attention on building, guiding, bringing together, collaborating, and leading people to success," "Mr. Elliott mainly focused on how he individually accomplished assigned tasks mostly but did not present thorough examples which demonstrated his ability to collaborate with and develop the skills of other staff members." Harris Aff. at 12–13. And relatedly, no elaborate explanation is required to explain Ms. Harris's commonsensical preference for recent over dated experience.

process.  And, in any event, Mr. Elliott has not shown why Mr. Wiatrowski's participation in the hiring process might raise an inference of discrimination.  Likewise, Mr. Elliott has failed to demonstrate that DOL's reliance on subjective criteria to distinguish among job applicants differed from the sort of reliance that the D.C. Circuit has sanctioned in the past.  Accordingly, the Court concludes that no reasonable juror could find that DOL discriminated against Mr. Elliott when it did not select him as Branch Chief for DCR because neither issue, individually or jointly, suffices to overcome DOL's motion for summary judgment.

### B.  Branch Chief for SI&P

With respect to his nonselection for Branch Chief for SI&P, Mr. Elliott argues that (1) Mr. Wiatrowksi was the true selecting official for the position and that his participation in the hiring process raises the specter of discrimination; (2) DOL relied on improper subjective criteria to distinguish candidates for the position; and (3) Mr. Doyle improperly destroyed his interview notes and other materials, which entitles Mr. Elliott to an inference that those materials would have been favorable to his claim.  The Court rejects the first two arguments because Mr. Elliott has not identified any triable issue concerning Mr. Wiatrowski's participation in the hiring process for Branch Chief for SI&P and Mr. Elliott has not shown any use of subjective criteria on which a reasonable jury might infer discrimination.  And while the Court concludes that Mr. Elliott has demonstrated that some—but not all—of the materials that Mr. Doyle generated during the selection process for Branch Chief for SI&P were improperly destroyed, it finds that, even with a favorable inference regarding those materials, Mr. Elliott's claim still cannot survive summary judgment.  Accordingly, the Court grants DOL's motion with regard to Mr. Elliott's claim about this position.

**1. Mr. Elliott Has Identified No Genuine Issue of Material Fact Regarding Whether Mr. Wiatrowski Acted As a Selecting Official or Whether DOL Improperly Used Subjective Criteria To Evaluate Candidates**

Mr. Elliott's first two arguments for why the Court should not grant summary judgment for DOL with respect to his claim about his nonselection for Branch Chief for SI&P mirror the arguments the Court rejected above regarding Mr. Elliott's nonselection for the position of Branch Chief for DCR. Specifically, Mr. Elliott argues that there is a genuine issue of material fact regarding whether Mr. Doyle merely recommended candidates to Mr. Wiatrowski who acted as the real selecting official. *See* Pl.'s Opp'n at 21. Mr. Elliott also argues that the selection process for this position was characterized by improper consideration of subjective criteria. Pl.'s Opp'n at 1–2. Because the Court has explained in detail above why these arguments fail, elaborate discussion is unnecessary.

With respect to the first argument, the record reveals no genuine issue regarding whether Mr. Doyle acted as a selecting official, no genuine issue regarding Mr. Wiatrowski's (minor) role in the selection process, and no reason why a jury might infer discrimination based on Mr. Wiatrowski's participation in the hiring process. *See supra* at pp. 11–15 (explaining these deficiencies with respect to Mr. Elliott's argument about his nonselection for Branch Chief for DCR).

Regarding the second argument, Mr. Elliott has not shown that he is more qualified than the selectee for the position. Mr. Elliott relies on the fact that he worked for his entire career in the unit that Mr. Ranon-Hernandez was selected to lead while Mr. Ranon-Hernandez had not done so. *See* Elliott Dep. 19:19-25, 20:1-9. As the Court explained above, this contention is insufficient to demonstrate that Plaintiff is significantly more qualified than Mr. Ranon-Hernandez. *See Stewart*, 352 F.3d at 429. A plaintiff must make such a showing to establish

that triable issues remain. *See Holcomb*, 433 F.3d at 897 ("[A] reasonable juror would usually assume that the employer is more capable of assessing the significance of small differences in the qualifications of the candidates, or that the employer simply made a judgment call."). In addition, Mr. Elliott has identified no evidence that Defendant's reliance on subjective criteria— indeed, criteria primarily listed in the vacancy announcement—might be pretext for discrimination. *See supra* pp. 15–19 (explaining the circumstances under which an employer may rely on subjective criteria to distinguish candidates). Accordingly, Mr. Elliott cannot overcome summary judgment on these bases.

2. **Mr. Elliott Has Identified No Genuine Issue of Material Fact Regarding the Purported Destruction of Evidence Related to the Selection Process for Branch Chief for SI&P**

Mr. Elliott next asserts that DOL failed to properly preserve documents related to the selection process for Branch Chief for SI&P. Specifically, according to Mr. Elliott, Mr. Doyle improperly failed to maintain a file, which included notes that he had written during candidate interviews, and also failed to preserve "other materials," including (apparently) application materials forwarded to him by Human Resources. Pl.'s Opp'n to MSJ at 4; Def.'s Reply at 5. Mr. Elliott argues that the purported destruction of this evidence warrants a negative inference against DOL and that, in light of the inference and other favorable evidence, his claim should survive DOL's motion for summary judgment. But Mr. Doyle's interview notes are in the record before the Court—and, thus, can hardly be regarded as destroyed—and Mr. Elliott has not shown how the purported destruction of any other evidence in Mr. Doyle's file might establish that the stated reasons for DOL's hiring decision were pretext. Accordingly, the Court disagrees that Mr. Elliott is entitled to bring this claim to trial.

The D.C. Circuit has recognized that "a negative inference may be justified where the defendant has destroyed potentially relevant evidence." *Gerlich v. U.S. Dep't of Justice*, 711

F.3d 161, 170 (D.C. Cir. 2013). To show entitlement to an adverse inference, the requesting

party must show that:

> (1) the party having control over the evidence had an obligation to
> preserve it when it was destroyed or altered; (2) the destruction or
> loss was accompanied by a 'culpable state of mind'; and (3) the
> evidence that was destroyed or altered was 'relevant' to the claims
> or defenses of the party that sought the discovery of the spoliated
> evidence, to the extent that a reasonable factfinder could conclude
> that the lost evidence would have supported the claims or defense
> of the party that sought it.

*Vasser v. Shulkin*, No. 14-0185, 2017 WL 5634860, at *3 (D.D.C. Nov. 22, 2017) (quoting

*Mazloum v. D.C. Metro. Police Dep't*, 530 F. Supp. 2d 282, 291 (D.D.C. 2008)).

With regard to the purported destruction of Mr. Doyle's interview notes, Mr. Elliott has

failed to make a fundamental showing—namely, Mr. Elliott has not demonstrated that DOL

destroyed this evidence. DOL admits that "[Mr.] Doyle had at the time of the selection a file that

contained the application materials forwarded to him by Human Resources and his interview

notes." *See* Def.'s Reply at 5. However, DOL argues that "there is no indication that Phillip

Doyle's records relating to the Branch Chief for [SI&P] position are 'missing'" because

"Doyle's interview notes for this position were included with his affidavit." Def.'s Reply at 5.

Indeed, Mr. Elliott himself filed a copy of Mr. Doyle's EEO affidavit. That document includes

an attachment labelled "Interview Notes Phillip M Doyle," which is followed by three pages of

handwritten text that appear to be notes from Mr. Doyle's interviews. *See* Ex. 9 at 37–40, ECF

No. 22-11. Mr. Elliott has not argued—and certainly has not demonstrated—that these are not

Mr. Doyle's notes from his interviews with candidates for the Branch Chief for SI&P position,

that these notes were somehow altered, or that any other notes might have existed. Because Mr.

Elliott has not provided any reason to believe that spoliation occurred with respect to Mr.

Doyle's notes, no negative inference is warranted.

With regard to the "other materials" purportedly in Mr. Doyle's file, the Court need not dwell on whether Mr. Elliott is entitled to a negative inference. Assuming that Mr. Elliott is entitled to such an inference, this is not enough to avoid summary judgment. As the D.C. Circuit explained in *Grosdidier v. Broad. Bd of Governors*, 709 F.3d 19 (D.C. Cir. 2013), even when spoliated evidence may have been favorable to the movant, the adverse inference must also be "sufficient to create a genuine issue of material fact." *Id.* at 28. In that case, the Circuit determined that a Title VII plaintiff was entitled to a permissive inference that she had performed well during her interview because the defendant agency had improperly destroyed contemporaneous notes taken by the interview panelists evaluating the plaintiff's interview performance. *Id.* However, the Circuit nonetheless upheld the district court's grant of summary judgment in favor of the agency, observing that "even if a factfinder could reasonably infer that the destroyed notes contained information that might be favorable to [the plaintiff], favorable evidence is not in all instances equivalent to evidence that would permit [the plaintiff] to survive summary judgment." *Id.* An inference that plaintiff had performed well in her interview did not undermine the defendant agency's explanation that it had selected a different candidate because of that candidate's knowledge, skills, and abilities. *See id.*

Here, DOL's explanation for its hiring decision revolves squarely on Mr. Elliott's purportedly subpar interview performance and Mr. Ranon-Hernandez's superior interview performance. Mr. Elliott has not identified anything that might have been in Mr. Doyle's file—other than the interview notes discussed above—that might bear on this matter. An adverse inference that the destroyed application materials would have been favorable to Mr. Elliott gets him little more than the positive inference that can already be drawn from the fact that Human Resources forwarded his application materials to Mr. Doyle and he was selected to interview for

the position.  Thus, Mr. Doyle's destruction of these application materials lends no support to Mr. Elliott's argument that DOL's contentions about the candidates' interview performances are pretext for discrimination.

***

Mr. Elliott has not demonstrated that there exists a genuine issue about Mr. Wiatrowski's role in the hiring process for Branch Chief for SI&P, and Mr. Elliott has, likewise, failed to show that DOL impermissibly utilized subjective criteria in evaluating applicants for that position. Furthermore, DOL's alleged failure to maintain materials from Mr. Doyle's file does not create a genuine issue of material fact sufficient to permit Mr. Elliott to bring this claim to trial.  Because no reasonable juror, based on these issues, either individually or combined, could find that DOL discriminated against Mr. Elliott when it did not select him for Branch Chief for SI&P, the Court grants DOL's motion for summary judgment on this claim.

### C.  Branch Chief for PPD

As with the first two nonselections described above, Mr. Elliott contends that there are triable issues about his nonselection for Branch Chief for PPD.  Namely, he argues that there are genuine issues of material fact concerning Mr. Wiatrowski's role in this selection process and concerning DOL's use of subjective criteria to evaluate candidates.  As previously, the Court rejects both arguments.  The Court, however, agrees with Mr. Elliott's final argument regarding this position:   because Mr. Elliott has shown that DOL improperly destroyed evidence generated during its selection for Branch Chief for PPD, he is entitled to an inference that those materials would have included evidence favorable to his claim, and therefore, on this claim, Mr. Elliott has produced sufficient evidence on which a reasonable juror might conclude that DOL's stated

reason for the hiring decision was pretext. Accordingly, the Court denies DOL's motion for summary judgment on this claim.

### 1. Mr. Elliott Has Identified No Genuine Issue of Material Fact Regarding Whether Mr. Wiatrowski Acted As A Selecting Official or Whether DOL Improperly Used Subjective Criteria To Evaluate Candidates

Just as with the other positions, Mr. Elliott first argues that there are genuine issues of material fact regarding Mr. Wiatrowski's role in the selection process for the position of Branch Chief for PPD and regarding Ms. Dickerson's use of subjective criteria to evaluate candidates. *See* Pl's Opp'n to MSJ at 10–12, 18–19. The Court must again reject those arguments. The record reveals no genuine issue regarding whether Ms. Dickerson acted as a selecting official and no genuine issue regarding Mr. Wiatrowski's role as a concurring official. In addition, Mr. Elliott offers only speculative and unpersuasive reasons why a jury might infer discrimination based on Mr. Wiatrowski's participation in the hiring process. *See* Pl.'s Opp'n to MSJ at 5. And, as the Court explained in detail above, DOL did not misstep in utilizing some subjective criteria to evaluate candidates for this position. Mr. Elliott offers only cursory arguments to the contrary. He fails to identify any specific instances in which DOL used subjective criteria to evaluate candidates for Branch Chief for PPD, let alone explain why the use of subjective criteria might be improper. *See id.* at 18–19. Accordingly, these are not bases for denying DOL's motion.

### 2. Mr. Elliott Is Entitled to a Spoliation Inference and His Claim Survives Summary Judgment

Finally, Mr. Elliott contends that when Ms. Dickerson retired, she improperly shredded notes from interviews that she had conducted for the Branch Chief for PPD position. Pl.'s Opp'n to MSJ at 4. DOL admits that Ms. Dickerson shredded her interview notes when she retired in July 2016, accordingly the Court need only address whether Mr. Elliott has made the necessary

showing for an adverse inference and, if so, whether, after considering the inference in combination with all of the evidence of record, his claim survives summary judgment. Def.'s Reply at 5. The Court agrees with Mr. Elliott that DOL had a duty to maintain theses records, that an adverse inference is warranted, and that his claim survives DOL's motion for summary judgment.

As explained above, to show entitlement to an adverse inference, the requesting party must show that:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind'; and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it.

*Vasser v. Shulkin*, No. 14-0185, 2017 WL 5634860, at *3 (D.D.C. Nov. 22, 2017) (quoting *Mazloum v. D.C. Metro. Police Dep't*, 530 F. Supp. 2d 282, 291 (D.D.C. 2008)). Mr. Elliott has satisfied each of these requirements.

First, Mr. Elliott has shown that DOL had a duty to preserve Ms. Dickerson's files when they were destroyed. According to DOL, Ms. Dickerson waited until her retirement in July 2016 to destroy all of her work-related records, including notes from the interviews that she conducted for the Branch Chief for PPD position. Def.'s Reply at 5. DOL appears to contend that Mr. Elliott is not entitled to an adverse inference because the documents were shredded two years after the selectee for the position had been notified of her selection. *See* Def.'s Reply at 5. DOL ignores, however, that "[a] party has a duty to preserve potentially relevant evidence whenever 'litigation is reasonably foreseeable.'" *Vasser*, 2017 WL 5634860, at *2 (quoting *Gerlich*, 711 F.3d at 170). By July 2016 when Ms. Dickerson shredded her interview notes, Mr. Elliott had

already filed the present action. As litigation was underway, DOL clearly had an obligation to maintain relevant evidence in its possession.

The Court also concludes that Mr. Elliott has satisfied his obligation of showing that the records were destroyed with the requisite culpable state of mind. "[T]o justify the issuance of an adverse inference instruction, the destruction need not be purposeful, and negligent spoliation suffices." *Vasser*, 2017 WL 5634860, at *6 (quoting *Mahaffey v. Marriott Int'l, Inc.*, 898 F. Supp. 2d 54, 61 (D.D.C. 2012))*; Grosdidier*, 709 F.3d at 27 (a spoliation inference is "appropriate in light of the duty of preservation notwithstanding the fact that the destruction was negligent"). Thus, in *Vasser v. Shulkin*, this Court recently concluded that the Veterans Administration had the requisite culpable state of mind to warrant an adverse inference instruction when it destroyed documents related to a litigant's claims pursuant to a record control schedule after litigation had already begun. 2017 WL 5634860, at *6. Ms. Dickerson's destruction of her interview notes contravened the duties of a party in litigation, even if there is no evidence that she acted in bad faith when she destroyed the records upon her retirement.

Lastly, the Court concludes that Mr. Elliott has shown that the records were relevant to his claims. To prove relevance, a party need only show that "a reasonable factfinder could conclude that the lost evidence would have supported the claims or defense of the party that sought it." *Mazloum*, 530 F. Supp. 2d at 291. In *Talavera v. Shah*, 638 F.3d 303 (D.C. Cir. 2011), the D.C. Circuit found that destroyed interview notes were relevant to a Title VII claim because the agency had defended its non-selection of the plaintiff based on her purportedly poor performance during an interview. *Id.* at 312. The Circuit explained that "the notes might have undermined [the] claim that the [selectee] exhibited more knowledge of the job than [the plaintiff] did and might also have confirmed [the plaintiff's] assertion that [the selecting official]

asked her different questions than he asked of the men he interviewed." *Id.* Just as in *Talavera*, DOL relies heavily on Mr. Elliott's purportedly inferior interview performance to explain why it did not select him for Branch Chief for PPD. *See* Def.'s MSJ at 13 (explaining that "Dickerson did not select Elliott for this position because, based on his interview responses, he 'lacked recent economic survey experience.'"). Mr. Elliott might have used Ms. Dickerson's interview notes to undermine DOL's contentions—for example, by identifying recorded instances in which he discussed his recent economic survey experience. The Court has no difficulty concluding that the interview notes are relevant to Mr. Elliott's claim. In sum, a reasonable jury could conclude that the non-accidental destruction of interview notes supports an inference that the notes might have contained information favorable to Mr. Elliott's claim.[5]

Considering the spoliation inference and Mr. Elliott's other evidence of unlawful sex and race discrimination—namely, evidence that the selectee for the position was a white woman, not a member of the same protected groups as Mr. Elliott, *see* Def.'s MSJ at 13—the Court finds that Mr. Elliott has offered sufficient evidence that DOL's reasons for failing to select him for the Branch Chief for PPD position was pretext. Unlike the materials Mr. Elliott claims that Mr. Doyle destroyed, Ms. Dickerson's interview notes bear directly on the legitimacy of DOL's explanation for its hiring decision. Because Mr. Elliott has produced sufficient evidence for a reasonable jury to find pretext, summary judgment is inappropriate. Accordingly, the Court denies DOL's motion with regard to this claim.

---

[5] Though the Court concludes that an adverse inference is justified, it "certainly do[es] not suggest that a jury must or should draw an adverse inference. *Hamilton v. Geithner*, 666 F.3d 1344, 1355–56 (D.C. Cir. 2012).

## V.  CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has produced sufficient evidence to raise triable issues regarding his nonselection for the Branch Chief for PPD position.  Plaintiff has not, however, raised such issues regarding his nonselections for the Branch Chief for DCR and the Branch Chief for SI&P positions.  Accordingly the Court grants in part and denies in part DOL's motion for summary judgment.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  January 26, 2018                                      RUDOLPH CONTRERAS
                                                                            United States District Judge